IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KENNEDIE JONES, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No. 23 cv 16817 |
| v. | Honorable Sunil R. Harjani |
| USP CHICAGO, INC., an Illinois corporation; SILVER CROSS AMBULATORY SURGERY CENTER LLC, d/b/a SILVER CROSS SURGERY CENTER, an Illinois limited liability company; and UNITED SURGICAL PARTNERS, INTERNATIONAL, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants' Motion to Dismiss Plaintiff's Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). Plaintiff filed a Class Action Complaint on December 15, 2023, alleging claims under the Illinois Biometric Information Privacy Act ("BIPA") and common law negligence for Defendants' alleged use of an employee time tracking software that requires employees to scan their fingerprints. Defendants argue that this Court lacks jurisdiction over Plaintiff's claims because she cannot meet the amount-in-controversy requirement under the Class Action Fairness Act ("CAFA") due to an August 2024 amendment to BIPA. Defendants contend that the amendment, which limits the amount of damages an individual may recover, was a clarification of the statute that applies to pending cases. For the reasons stated below, the Defendants' Motion to Dismiss [56] is denied.

**Background**

This dispute centers on a 2024 amendment to BIPA. In 2023, the Supreme Court of Illinois answered a certified question from the Seventh Circuit about claim accrual under BIPA. *See Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, *as modified on denial of reh'g* (July 18, 2023). The Seventh Circuit asked the following question of law: "Do section 15(b) and 15(d) claims accrue each time a private entity scans a person's biometric identifier and each time a private entity transmits such a scan to a third party, respectively, or only upon the first scan and first transmission?" *Id.* ¶ 1. The Supreme Court of Illinois answered in the affirmative, holding that "a separate claim accrues under the Act each time a private entity scans or transmits an individual's biometric identifier or information in violation of section 15(b) or 15(d)." *Id.* In acknowledgment of "policy-based concerns about potentially excessive damage awards," the Illinois Supreme Court "respectfully suggest[ed] that the legislature review these policy concerns and make clear its intent regarding the assessment of damages" under BIPA. *Id.* ¶ 43.

In August 2024, Public Act 103-0769 was signed into law, which amended Section 20 of BIPA. The legislature added the following language to Section 20:

> (b) For purposes of subsection (b) of Section 15, a private entity that, in more than one instance, collects, captures, purchases, receives through trade, or otherwise obtains the same biometric identifier or biometric information from the same person using the same method of collection in violation of subsection (b) of Section 15 has committed a single violation of subsection (b) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section.
>
> (c) For purposes of subsection (d) of Section 15, a private entity that, in more than one instance, discloses, rediscloses, or otherwise disseminates the same biometric identifier or biometric information from the same person to the same recipient using the same method of collection in violation of subsection (d) of Section 15 has committed a single violation of subsection (d) of Section 15 for which the aggrieved person is entitled to, at most, one recovery under this Section regardless of the number of times the private entity disclosed, redisclosed, or otherwise disseminated the same biometric identifier or biometric information of the same person to the same recipient.

740 Ill. Comp. Stat. 14/20(b)–(c).[1] The issue before the Court, as framed by the parties, is whether this amendment is a clarification of the prior law that applies to pending proceedings or a substantive change in the law that applies only prospectively. Defendants argue that the amendment is a clarification of the BIPA statute, so *Cothron*'s "per-scan" theory of liability does not, and never did, apply to Plaintiff's claims. In their briefing, both parties reference a potential class size of up to 396 members. This number is derived from Defendant USP Chicago, Inc.'s Answer to Plaintiff's Interrogatory No. 12, which identifies the number of workers who may have used a time clock during the Class Period. Doc. [57-2] at 7. With this number, Defendants argue that Plaintiff cannot meet CAFA's $5,000,000 amount-in-controversy requirement because the amendment provides that each class member would be entitled to at most one recovery, totaling only approximately $3,960,000 even if all class members recover liquidated damages for intentional or reckless violations of both Section 15(b) and Section 15(d).

**Legal Standard**

A Rule 12(b)(1) motion provides for dismissal of a claim based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). When the amount in controversy is challenged, "it is critical for courts to focus on the phrase 'in controversy' and to remember the difference between even highly unlikely results and truly impossible results, and to avoid prematurely trying the merits of the case in deciding jurisdiction." *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 854 (7th Cir. 2022). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case

---

[1] Public Act 103-0769 also amended Section 10 ("Definitions") to define "electronic signature" and include it in the definition of "Written release." 740 Ill. Comp. Stat. 14/10. Defendants do not address this change in their briefing, but it does not alter the Court's conclusion.

belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) (citation omitted).

## Discussion

As noted above, this Court has subject matter jurisdiction if the amendment applies only prospectively, which would result in an amount in controversy of above $5,000,000. This is because the potential class members could recover liquidated damages for each time their biometric information was collected or disclosed in violation of the statute. Assuming each potential class member used the time clock three times and recovers for intentional or reckless violations of either Section 15(b) or Section 15(d), as Plaintiff argues, the amount in controversy would be more than $5,000,000. If, on the other hand, the amendment applies to pending cases, each potential class member could only recover once for violations of Section 15(b) or Section 15(d). As Defendants argue, the CAFA amount-in-controversy requirement would not be met.

### I. Is the Amendment a Clarification or Change?

Defendants argue the amendment is a clarification because it did not change the protections afforded under BIPA and only clarified how damages should be assessed. Plaintiff responds that the amendment is a change in the law that abrogates the holding in *Cothron* and redefines what constitutes a violation under the statute.

Under Illinois law, an amendatory act that clarifies a statute "must be accepted as a legislative declaration of the meaning of the original [a]ct." *K. Miller Const. Co. v. McGinnis*, 938 N.E.2d 471, 482 (Ill. 2010). If, on the other hand, an amendment changes the law, a court must determine whether the amendment applies retroactively or prospectively. Illinois law presumes that statutory amendments are intended to change, not clarify, existing laws. *See, e.g.*, *People v. Stewart*, 2022 IL 126116, ¶ 20. However, this presumption is not controlling, and "[a] reviewing

4

court should consider the circumstances surrounding the amendment to determine whether the legislature intended merely to interpret or clarify the original act." *Id.* Factors that indicate whether an amendment is a clarification rather than a substantive change in the law are "'whether the enacting body declared that it was clarifying a prior enactment; whether a conflict or ambiguity existed prior to the amendment; and whether the amendment is consistent with a reasonable interpretation of the prior enactment and its legislative history.'" *McGinnis*, 938 N.E.2d at 481 (quoting *Middleton v. City of Chicago*, 578 F.3d 655, 663–64 (7th Cir. 2009)).

    **a. Express Declaration**

As to the first factor, both parties acknowledge that the Illinois legislature did not expressly declare that the amendment serves as a clarification. Defendants argue that the proximity between the Illinois Supreme Court's invitation to the legislature to "make clear its intent" and the amendment suggests the legislature intended to clarify, not change, the law. Defendants further contend that "[w]hile the legislature's amendments may be poorly phrased and not overtly state that they serve merely as a means of clarification, such can be inferred" by the legislature's "timely response" to the Illinois Supreme Court's "explicit request." Doc. [84] at 6. The Court disagrees. Had the legislature intended to include an express declaration, it knew how to do so. *See Cuevas v. Berrios*, 2017 IL App (1st) 151318, ¶ 41 (noting "the General Assembly frequently employs such declarations when it rewrites statutes to clarify existing intent"). This Court "does not operate as a third house of the legislature to cure or codify, by judicial action, defendants' conception of what the legislature allegedly meant to do." *Clark v. Han*, 651 N.E.2d 549, 554 (Ill. App. Ct. 1995). Courts are not meant to "add provisions not found in the law." *Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 24.

5

Further, an invitation by a court to clarify a statute does not preclude the legislature from responding in a different manner. As another court in this district aptly noted, "*Cothron*'s 'make clear' phrasing does not cabin the legislature's future action or by itself overcome the presumption that the law has been changed . . . If the Illinois legislature had responded to *Cothron*'s invitation by repealing the Act altogether, that action could not be credibly characterized as a mere 'clarification.'" *Schwartz v. Supply Network, Inc.*, 2024 WL 4871408, at *3 (N.D. Ill. Nov. 22, 2024) (citation omitted); *see People v. Glisson*, 782 N.E.2d 251, 256 (Ill. 2002) (amendment was a substantive change when it in effect repealed a crime).

    **b. Conflict or Ambiguity**

As to the second factor, Defendants argue there was an ambiguity about how to assess damages under Section 20 that was acknowledged by the court in *Cothron* when it invited the legislature to "make clear its intent." *Cothron*, 2023 IL 128004, ¶ 43. Plaintiff counters that *Cothron*'s references to the plain language of the statute demonstrate there was no ambiguity. Plaintiff also argues there were no conflicting appellate decisions to resolve because the court in *Cothron* "is the final authority on the matter." Doc. [82] at 8. Under Illinois law, "[t]he best indication of legislative intent is the statutory language, given its plain and ordinary meaning." *Caveney v. Bower*, 797 N.E.2d 596, 599 (Ill. 2003). "A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses." *People v. Jameson*, 642 N.E.2d 1207, 1210 (Ill. 1994).

In *Cothron*, the Illinois Supreme Court found the plain language of the BIPA statute unambiguous. The court held that "the plain language of section 15(b) and 15(d) demonstrates that such violations occur with every scan or transmission" and that "the statutory language clearly supports plaintiff's position." *Cothron*, 2023 IL 128004, ¶¶ 30, 40. This Court declines to revisit

the Illinois Supreme Court's findings that the plain language of the statute was clear. *See Schwartz*, 2024 WL 4871408, at *2. "When interpreting state law, a federal court's task is to determine how the state's highest court would rule." *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011). Here, the highest court of Illinois has spoken.

Defendants contend that "[h]ad the statute been clear and the legislative intent discernable, there would have been no need for the Illinois Supreme Court to invite the Illinois legislature to 'make clear its intent.'" Doc. [57] at 12. Defendants' assertion is not completely without merit. However, while the court in *Cothron* could have been clearer as to whether it found the plain language of both Section 15 and Section 20 unambiguous, it specifically referenced the language of Section 20 and, in doing so, expressed no concern that it was ambiguous. The court cited the "prevailing party may recover" language of Section 20 and concluded that "[i]t also appears that the General Assembly chose to make damages discretionary rather than mandatory under the Act." 2023 IL 128004, ¶ 42. Given that the court in *Cothron* examined the language in Section 20 and did not suggest it was ambiguous, this Court is not persuaded that *Cothron*'s invitation to the legislature necessarily means it found the language ambiguous.

Defendants further argue that *Cothron*'s acknowledgement that "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business" nevertheless evinces an ambiguity. The Court disagrees. In another case before *Cothron*, the Illinois Supreme Court also interpreted Section 20 when it determined that an "aggrieved" person under that statute is not limited to those who can prove actual injury or damage beyond a statutory violation. *See Rosenbach*, 2019 IL 123186. The court held that such an interpretation would "depart from the plain and, we believe, unambiguous language of the law." *Id.* ¶ 38. The court in *Rosenbach* noted that the legislature addressed concerns about the use of

7

biometrics in part by "subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law [citing Section 20] whether or not actual damages, beyond violation of the law's provisions, can be shown." *Id.* ¶ 36. It was "clear" to the court that "the legislature intended for this provision to have substantial force." *Id.* ¶ 37. In summary, the Illinois Supreme Court "has repeatedly recognized the potential for significant damages awards under the Act." *Cothron*, 2023 IL 128004, ¶ 41. Thus the Illinois Supreme Court has consistently interpreted Section 20 and concluded that the prior statute clearly permitted large damage awards.

### c. Consistent with a Reasonable Interpretation of the Prior Enactment and Legislative History

Defendants argue that the amendment is consistent with a reasonable interpretation of the prior statute, pointing to *Cothron*'s finding that "there is no language in the Act suggesting legislative intent to authorize a damages award that would result in the financial destruction of a business." *Cothron*, 2023 IL 128004, ¶ 42. On the other hand, Plaintiff contends that the amendment is inconsistent with a reasonable interpretation of the prior BIPA enactment because its purpose was to wholly reject *Cothron*'s interpretation of the statute.

The Court finds that the amendment's limitation as to what constitutes a violation and how often an aggrieved individual can recover is inconsistent with a reasonable interpretation of the prior statute and its legislative history. As noted above, the Illinois Supreme Court has recognized that the legislature intended to use the possibility of substantial liability as a means to incentivize private entities to comply with the law. *See, e.g.*, *Cothron*, 2023 IL 128004, ¶ 41; *McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 48; *Rosenbach*, 2019 IL 123186, ¶¶ 36–37. An amendment, such as the one at issue here, that limits potential liability is inconsistent with this

8

interpretation of the prior statute. In conclusion, the Court finds that the factors do not rebut the state law presumption that the amendment is a change in the law.

## II. Does the Amendment Apply Retroactively?

Having determined that the amendment is a change in the law, the next step of the analysis is to decide whether it applies retroactively or prospectively. "Illinois courts no longer utilize a vested rights analysis to determine temporal reach." *Perry v. Dep't of Fin. & Prof'l Regulation*, 2018 IL 122349, ¶ 64. The Illinois Supreme Court has instead adopted the analysis set out by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Id.* ¶ 39. Under the first step of the *Landgraf* analysis, "a court first determines whether the legislature has 'expressly prescribed' the temporal reach of the new law." *Id.* ¶ 40. "If the legislature has clearly indicated the temporal reach, then such temporal reach must be given effect unless to do so would be constitutionally prohibited." *Id.* Illinois courts do not go beyond step one of the *Landgraf* analysis. *Id.* ¶ 41. This is because Section 4 of the Illinois Statute on Statutes, 5 Ill. Comp. Stat. 70/4, provides a default answer when the temporal reach is not clearly indicated in the text of a statute. *Id.* "[S]ection 4 represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney*, 797 N.E.2d at 602.

Here, the Illinois legislature did not "expressly prescribe" the temporal reach of the amendment. The plain text of the amendment contains no express provision regarding its temporal reach.[2] *See People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 34 ("Under the first

---

[2] In the Court's view, the unambiguous text resolves the issue in this case. The Court also notes that another court in this district has referenced the legislative debate as supporting the conclusion that the legislature did not intend for the amendment to apply retroactively. *See Blocker v. Biomat USA, Inc.*, 2024 WL 5434135, at *1 n.1 (N.D. Ill. Dec. 6, 2024).

step of *Landgraf,* we are to determine whether the text of the amended provision, itself, clearly expresses the legislature's intent that the amendment be given either prospective or retrospective application."). Thus, the Court must look to Section 4 of the Statute on Statutes.

The Court notes that Defendants do not conduct a retroactivity analysis or reference Section 4 of the Statute on Statutes. Nonetheless, they argue that the amendment is not a substantive change. Plaintiff, on the other hand, asserts that the amendment is substantive because it "alters the determinations (1) that a separate BIPA violation occurs with each scan or transmission, (2) that a separate BIPA violation accrues with each scan or transmission, and (3) that a BIPA plaintiff may recover liquidated damages for each scan or transmission." Doc. [82] at 13. For the following reasons, the Court agrees with Plaintiff that the amendment is a substantive change.

A procedural change "prescribes a method of enforcing rights or involves pleadings, evidence and practice." *Schweickert v. AG Servs. of Am., Inc.*, 823 N.E.2d 213, 216 (Ill. App. Ct. 2005). "Examples of amendments that have been characterized as procedural and applied retroactively include amendments to the long-arm statute and service of process changes." *Id.* A substantive change "establishes, creates, or defines rights." *Id.* For example, in *Caveney*, the Illinois Supreme Court determined an amendment was substantive because it established an income tax credit that was previously unavailable to S corporation shareholders. 797 N.E.2d at 604. The Illinois Supreme Court has also characterized an amendment to the Illinois Environmental Protection Act, 415 Ill. Comp. Stat. 5/42(e), allowing the government to seek a mandatory injunction as substantive because it "create[d] an entirely new type of liability." *U.T. Einoder, Inc.*, 2015 IL 117193, ¶ 36.

In the criminal context, "[s]ubstantive amendments include those that alter the scope or the elements of a crime." *People v. Atkins*, 838 N.E.2d 943, 947 (Ill. 2005). For example, the Illinois

Supreme Court held that an amendment to a criminal statute was substantive when it had the effect of repealing an offense entirely. *Glisson*, 782 N.E.2d at 256. The Illinois Supreme also determined an amendment to a criminal statute was substantive because it "alter[ed] the elements to be proved by the State." *People v. Digirolamo*, 688 N.E.2d 116, 128 (Ill. 1997).

      While Defendants are correct that the amendment addresses how many times a party may recover, their argument seemingly ignores the language of the amendment that limits the scope of what constitutes a violation, *i.e.,* the language that provides that a private entity that violates subsection (b) or subsection (d) in more than one instance "has committed a single violation." Prior to the amendment, a BIPA claim accrued "with every scan or transmission of biometric identifiers or biometric information without prior informed consent." *Cothron*, 2023 IL 128004, ¶ 45. After the amendment, multiple scans or transmissions of the same biometric identifier are treated as one violation for which an individual is entitled to one recovery. The amendment, therefore, also defines a "violation" and modifies (by limiting) the scope of liability a private entity faces. This is more than a change to recovery but rather, a substantive change in the law like in *J.T. Einoder* and *Caveney*. *See, e.g.*, *J.T. Einoder*, 2015 IL 117193, ¶ 36 (amendment is substantive when it imposes a new liability); *Caveney,* 797 N.E.2d at 604 (amendment is substantive when it establishes a new tax credit). The Court has also reviewed the decisions of other courts in this district as well as various Illinois state courts that have reached the same conclusion. *See, e.g.*, *Schwartz*, 2024 WL 4871408; *Giles v. Sabert Corp.*, 2025 WL 274326 (N.D. Ill. Jan. 21, 2025); *Gregg v. Cent. Transp. LLC*, 2025 WL 907540 (N.D. Ill. Mar. 21, 2025); *Wallace v. Vee Pak, LLC*, No. 24 L 4560, (Ill. Cir. Ct. Oct. 10, 2024); *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588,

(Ill. Cir. Ct. Oct. 30, 2024). For the reasoning above, the Court finds that the amendment is a substantive change in the law that applies only prospectively.[3]

Because the amendment does not apply retroactively, and accepting as true Plaintiff's allegation that "employees have to use their fingerprints multiple times each day in order to 'punch' in and out of work," Doc. [1] at 7, it is not a legal certainty that Plaintiff cannot meet the amount-in-controversy requirement of CAFA, even if the class consists of 396 members.[4] *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction."). Put another way, there is a plausible basis for Plaintiff and the class to recover over $5,000,000 if each potential class member used the time clock, for example, three times, and receives liquidated damages for an intentional or reckless violation of either Section 15(b) or Section 15(d). Thus, the Court has subject matter jurisdiction.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [56] for lack of subject matter jurisdiction is denied.

**SO ORDERED.**

Dated: May 29, 2025

_____
Sunil R. Harjani
United States District Judge

---

[3] Having come to this conclusion, the Court does not address Plaintiff's argument that retroactive application violates separation of powers principles or Defendants' argument that the amendment does not impact a vested right.

[4] Based on the allegations in the Complaint and supplemental briefing, including Defendant USP Chicago, Inc.'s answers to Plaintiff's interrogatories, this Court presently has subject matter jurisdiction. If during the pendency of the discovery process it appears that Plaintiff cannot meet the amount-in-controversy requirement under CAFA, the parties are instructed to raise the issue with the Court.